To The Clerk of said Court

RE: The state of Texas

vs.

Robert Lynn McCarver

RECEIVED IN
COURT OF CRIMINAL APPEALS

NOV 24 2015

Abel Acosta, Clerk

Dear Clerk

The record in these 11.07 habeas Corpus Proceedings shows that the writ filed for Cause Number CR01260 is missing from the record. There were four (4) convictions upon which four (4) writs were filed. Please locate the above mentioned writ and file it with the other three.

Sincerly Robert Mc Carver

Robert Lynn McCarver
Telford Unit
3899 state Hwy 98
New Boston Texas 75570

83,035-01,02,03

RECEIVED IN
COURT OF CRIMINAL APPEALS

NOV 24 2015

Abel Acosta, Clerk

Causes No. Cr 01215 - HC1
            Cr 01228 - HC1
            Cr 01229 - HC1

| | | |
|---|---|---|
| Robert Lynn McCarver | § | In the District Court |
| v. | § | Red River County |
| The State of Texas | § | 6th Judicial District |

## McCarver's Objections to the Proposed findings of fact And Conclusions of Law in "Plain Error"

To the Honorable Judge of Said Court:

Comes Now, the petitioner Robert Lynn McCarver And respectfully submitts his objections to the proposed findings of fact And conclusions of Law And in support thereof would Respectfully Request the Court to find And conclude As follow: "Plain Error", Rule 52,(b).

## I.

On June 10, 2009, Mr. Meehan was hired to Represent Mr McCarver for the following charges which occured in, June of 2006, three Years prior. Charges which were Not Indicted because the facts proved that Mr. McCarver did Not Shoot At (or) in the direction of the house.

Under Rule 52(b) of the Federal Code of Criminal Procedure the Applicant files his objection to the States findings and conclusions of Law due to "Plain Error" so obvious and conspiciously clear that the Trial Judge and prosecutor were derelict in countenancing it. Even in an absence of the Applicant timely assistance in detecting it.

The State seeks to impose criminal liability on "Ricochets" from shots fired in a different direction. with small calibers, an Excercise of Authority which is "Teague Barred" do to the fact that the foreknowledge is requisitely necesary to establish a crime chargable by Law. "The Corpus delicti" The "Actus Reus + Mens Rea" is not found.

Due to the fact that. Every shot fired from a small caliber guns by Law Abiding citizens have an unintended possibility of Ricochets, imposing criminal liability for Ricochets would cause a massive miscarriage of Justics and threaten all law abiding citizens with small caliber guns.

The mere fact that the deputy stated that the bullets "Could have Ricochet". the state sought to impose criminal liability on a Ricochet that, "DID NOT HAPPEN" !??

2

## II.

On December of 2007, Mr. McCarver was indicted for three charges, Two of which were the same; Deadly Conduct CR01215, Deadly Conduct CR01228, and Child Endangerment Cr01229. all which were from the same criminal episode and the result of shots being fired at a car that was not occupied.

1) In a Witness statement, Leona McCarver clearly stated that when she arrived at the the house, she "turned into the drive-way", a key statement which indicated that the front bumper and windsheild was facing the house.

2) Mr. McCarver was arrested for shots fired into the front windsheild of the car. which indicated that Mr. McCarver was between the house and the car when he shot at the car in the driveway.

Note: If the car would have back-into the driveway, the House would have been behind the car. But the car pulled into the driveway. which means, Mr McCarver shot toward the street, not toward the house as it was misinterpreted in the Indictments.

3

## III

Another key factor which indicated that the shots were fired in a different direction from the House is the fact that;

On November 15, 2006, in Deputy Hamric's police Report he pointed out that the shots could only hit the house if they would have "Ricochet".

Note: Definition of: "Ricochet" means to change directions.

Therefore, Mr McCarver could not have shot at (or) in the direction of the House if the bullets needed to ricochet to hit it.

More simply stated: The bullets would have to change the direction they were shot in to hit the house. Establishing that the bullets were not shot at or in the direction of the House meaning Mr McCarver is No Guilty as charged.

Mr. McCarver was advised to plead Guilty to a crime he did not commit but was Erroniously Lead to believe he committed the crime and had to plead Guilty by a defence Attorney whom obviously never reviewed the facts as they were stated, as applied to the Law.

Thus if it were not for counsels Erronious advice Mr McCarver would not have plead Guilty and

would have Rather Gone to trial to prove his innocents.

## IV

The ultimate Question which all 3 charges must prove to meet the statutory Requirement of the Law, mainly depend on whether or not shots were fired at or in the direction of the House occupied by individuals on of which included a child. The State alleged that shots were fired at (or) in the direction of the house forming "deadly conduct" and "child Endangerment" by children being in the house, but both charges fail if shot were never shot at (or) in the direction of the house.

It is clearly malicious prosecution to falsely claim that shots were fired at the HousE to pile up false charges against another and the public reputation of the Judicial system requires a Review and Reversal of all three charges.

## V

Material to the crime charge And material to the state's theory of Guilt is whether or not shots were fired at or in the direction of the house; such is the material issue that must be decided

5

in order to resolve the controversel issue where facts precludes summary Judgment.

Whether or not the shots were fired at the house is a not-yet-decided point due to the plea of Guilty being unintellegently made. thus in itself and in connection to both charges the direction the shots were fired is requisitly necessary to estable a guilty verdict therefore the requirments of Art. 1.15 has not been met.

## Prayer for Relief

The Petitioner prays that the above entitled charges be dismissed and an Acquital be entered.

Robert McC

## Certificate of Service

I Robert Lynn McCarver do hereby certify that a true and correct copy of the above has been sent to the State Attorney of Red River County and the court of criminal Appeals This 18 day of November, 2015

Robert McC

Pro se Petitioner.

6

ON 11/15/6, Deputy Hamric and I were dispatched to #65 FM 195, Krissi Green's residence. Green called and said Robert McCarver had assaulted his wife, daughter, shot up a car in her driveway and was armed with a pistol attempting to break into her home.

I arrived and we checked the area for the suspect. He was unable to be found. I posted Deputy Hamric outside on a perimeter. The family was scared to stay there and asked us to escort them out of the area. There were several small children throughout the house. The were also teenagers and two young women inside the trailer. The female on the couch was Chasity McCarver. She was crying and looked to be in a lot of pain. Her mother, Leona McCarver was frantic and wanted to know where the ambulance was for her injured daughter. I told her the ambulance was refusing to come up until we had secured the scene. Using our overhead lights and spotlights, we lit up the yard area and escorted the victims away. Some in personal cars others by ambulance. I spoke with witness and they all said the suspect would kill them. I determined that due to the suspects behavior and having a gun (and using it), I asked everyone to leave to a safer area. His wife had minor injuries from his assault and did not need treatment. His daughter was bleeding from her mouth and vagina from his assault. She could not even walk on her own, she had to be carried to the ambulance due to her injuries. She was transported by ambulance.

There appeared to be <u>several holes in the windshield that looked like bullet holes.</u> (Due to the lack of officers, darkness, children in the area; no pictures were taken of the car that will be done at RRSO by the investigator handling the case). The kids left and the victims came to RRSO to fill out complaints and give statements (<u>see video</u> from RRSO).

I first interviewed Green and one of the suspects other daughters, Lacey McCarver. Lacey was at work at the time but felt like she needed to tell me how violent he has been and how he had refused to get a job and that they had no electricity at their home. Lacey was at work during both assaults. Green and I spoke freely for a few minutes while she detailed the night's events. (See <u>interview tape</u> and written statement). Green stated he had assaulted his wife and daughter and <u>shot up a car that was parked in front of her house. She said that the bullets could have easily gone thru her trailer and injured/killed her or her kids. I agreed, especially on glass that is thick and angled like car glass, ricochets are very likely with smaller calibers.</u> She said the suspect was wearing a camo jacket, jeans and possibly a red hat or red shirt. He had a small dark colored object in his hands that looked to be a pistol (this is also, what she reported to 911). Lacey stated that the suspect had a pistol that she knew of; it was a dark colored .22 that had wood grips. Lacey stated <u>he carries it everywhere on him.</u> Lacey also stated that she wanted him to remain in jail for her mom's safety. Green stated that during his crime at her house, he attempted to break into her back door and she thought he may have hurt her if he could have gotten inside. She also said she heard the shots that he shot into Leona's car.

Next, I spoke with the mother and the other daughter after they returned from the Clarksville ER. They stated that Chasity was kneed hard enough (five times) by the suspect that she had vaginal bleeding and blood was in her underwear. I asked if it was not too much trouble could we save the the undergarments as evidence and they were placed in a paper bag and tagged. They both wrote statements and spoke with me about

The Front windsheild of A car that turned in to the Driveway And parked in front of the House,

if it would have Ricochets

7

0056

0080

both assaults (see interview tape and written stmts). The mother was adamant about us catching the suspect. Both agreed with the other witness as to the camo jacket and jeans being the clothing worn by the suspect. The daughter was visibly shaken and upset. Leone said that Robert and she had been arguing and at Krissi house, it became physical. He choked her around the neck. Seeing what was happening, Krissi asked him to go outside and do a chore for her (hoping that the separation would calm things down). The daughter advised that earlier at her house is where she was kicked, kneed, punched and choked to the point of almost passing out. Chasity said that Robert was mad at her mom and tried to take it out on her. During the assault, she was trying to get loose to run away but he choked her to the ground and she almost passed out. They then went to Krissi's and that when the RRSO was called. Both women were sure that when the suspect gets released that he would assault them even worse. I repeatedly urged them to let us give them a ride to Family Haven and get them some help.

The suspect was unable to be located despite officers looking for him hours after the offenses occurred. Victims were given family haven/family violence packets and strongly urged not to go back home until daylight. Case is open awaiting warrants. The panties (with blood) and photos of victim were kept at RRSO. **The suspect also has a valid protective order against him which prohibits him from possessing firearms. (102nd Dist Ct.) Roden 604.**

8

0057

0081

Wife?

NAME Leann McGruff   HOME PHONE No P.S.
ADDRESS 113 CR 2342
Clarksville, TX   AGE 34
DL 16137375   WORK PHONE
CASE NUMBER 062175   SS# 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
   DOB 1-7-1972

I realize that it is a violation of the Texas Penal Code, section 37.08 for me to make a false report to a peace officer. That means to report an offense knowing that the offense did not occur or knowing that I have no knowledge about the offense.

I went to Krissi Greens house around pm 7:05 - 7:10 on 11-15-06 to use the phone to call Christy to find out when she and her Ken were coming home. Well I pulled into the driveway and she said she was Kevin in the truck. I asked if Robert was in the house. She Kristi said yes that they had rode out Gas so I pulled on up and went into the house and Kevin Robert Green on the couch. Robert asked Krissi if he could borrow her car so I asked if I could borrow a cigarette so I went back out side to go and take Kevin to get gas Robert was behind the Glass door so I got in my car Kevin He told me let's go clean the yard. I told him where He never said so and then He started a after knife into my mouth Christy said to her Ned you better not be killing my mom. He said He will not guilty and said he will not He said that He started a lighter into my mouth.

The above statement is true and correct and to the best of my knowledge accurately describes the events as I remember them.

SEE BACK PAGE

SIGNATURE   INVESTIGATING OFFICER
DATE 11-15-6   TIME _____ AM/PM

PAGE 1 OF 2 OF STATEMENT

0059

WITNESS STATEMENT

NAME _____ HOME PHONE _____
ADDRESS _____ WORK PHONE _____
_____ AGE _____
DL _____ SS# _____
CASE NUMBER _____ DOB _____

I realize that it is a violation of the Texas Penal Code,
section 37.08 for me to make a false report to a peace
officer. That means to report an offense knowing that the
offense did not occur or knowing that I have no knowledge
about the offense.

_So when He Got into the Car on Passanger_
_Side, That I was a trouble maker, Where_
_Ever The bigger lover, Even I Picked family white_
_And I said I Never Picked to My white. And_
_Then He Slap me across my left Cheed, and_
_Choked me. And I got out of the Car And_
_went back into the house He Came in after_
_I went into the Bathroom He knocked out_
_the door. And I unlocked it He Drug me_
_by my throat again. I couldn't breath. So_
_I Grabbed His beard and pulled and I_
_Ran Back to the Livingroom. He left_
_and Came back. I wanted to go out I Went_
_to talk to him. So He shot my window_
_out of my Car. He left and Came Back_
_My daughter came in wat up He was_
_out side Krissi's window, I told that the_
_Cops were Coming they Could help me_

_____
_____
_____

The above statement is true and correct and to the best of
my knowledge accurately describes the events as I remember
them.

_Kim M'Carver_
SIGNATURE
DATE 11-15-06

_[signature]_
INVESTIGATING OFFICER
TIME _____ AM/PM

PAGE 2 OF 2 OF STATEMENT

10

0059